IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

MARTIN A. BOYD,

    Plaintiff,

v.

AIRCRAFT POWER AND SERVICES, INC., aka APS INC., and COMMERCIAL AIRCRAFT EQUIPMENT INC.,

    Defendant.

Case No. CIV-04-438-SH



FILED

AUG 1 1 2006

WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By_____
    Deputy Clerk

### DEFENDANTS' TRIAL BRIEF

**Brief Factual Background**

Plaintiff was employed by ATI Sales and Services, Inc. (ATI) in 1994. He remained a core employee of the company for the entirety of the time he worked there, at times serving in de facto capacity as the general manager – or at least co-general manager. He was responsible for some hiring and some firing and for significant functions within the facility.

Plaintiff was with the company through significant changes in the facility, the business in general and his personal life. After the Plaintiff had been employed by ATI for some time, the owners of the company at the time, Brandy McCarty and Angela Roberts (McMurray), bought a second company, Aircraft Power Services, Inc. (APS), that would allow for different business opportunities in the aviation field. The new company also operated out of the ATI facility for some time, but eventually ceased operations due to a significant downturn in the business. Also, the Plaintiff had a critical

heart surgery in 1999. However, through all of these changes, the Plaintiff remained a core employee of ATI.

The business was not on solid ground when the terrorist attacks commonly referred to as 9/11 occurred, having a profound impact on the entire airline industry. The business continued to falter, until it eventually fell into bankruptcy. The company continued to operate as a debtor in possession when Cindy Brown became interested in purchasing the assets of the company from the bankrupt company's primary creditor (Local Oklahoma Bank). In addition to purchasing the assets, Mrs. Brown arranged to purchase APS in order to be able to maintain a market presence and more easily obtain federal licensing required to provide services in the industry. Because APS was not operating, it was able to avoid bankruptcy.

Ms. Brown's purchase of the entity and assets closed in March of 2004, close in time to the events leading to the instant action. The new general manager of APS, Richard Ribich, issued to Plaintiff an offer for Plaintiff to become a consultant from March through May of 2004. Mr. Ribich has stated that this was due to a belief that Plaintiff had announced that he would retire in May, when he was 62. Mr. Ribich has also stated that his offer for Plaintiff to become a consultant was due to the fact that the person he had hired to replace the primary job functions of the Plaintiff needed to begin employment in March. The Plaintiff denies having ever announced retirement. Most every other person who has been deposed to date has made statements to the contrary. Notably, Mr. Ribich has stated that he is no longer employed at the facility, by any named Defendant, nor does he have any business or personal ties to any party to the litigation.

The Defendant, Commercial Aircraft Equipment, Inc. (CAE) is a separate business entity, operated at a separate facility in a separate state, Texas, under whose laws it is separately incorporated. While the current owner of APS is also the owner and primary founder of CAE, the Plaintiff has stated that he has never been to the CAE facility for any business purpose. CAE was not even incorporated until May of 2003 and did not conduct active operations until sometime thereafter. Notably, CAE is no longer producing any products or providing any services due to stated inability to become profitable.

**Proposition One: The Plaintiff was never employed by CAE in any fashion**

Plaintiff has stated that he has never been to the CAE facility in Texas for any business purpose. He said that he had been to the property that is now owned by CAE when it was a different business, but not for any CAE-related business. For a short time near the conclusion of his employment at ATI, Plaintiff's paychecks were issued by CAE, but only as a result of an agreement between ATI, as a debtor in possession not yet purchased by Ms. Brown, and CAE to provide payroll services due to the infeasibility of ATI to continue issuing paychecks.

**Proposition Two: Plaintiff was an independent contractor for APS**

When Mr. Ribich offered for Plaintiff to become a consultant, Plaintiff was free to refuse. Plaintiff and Mr. Ribich agree that Plaintiff requested from Mr. Ribich a second letter confirming his consultant status. Plaintiff and Mr. Ribich have stated that Plaintiff made no protest to the change in position and that he never protested the change. Further,

APS issued compensation in the form it would any other vendor of services and Plaintiff accepted each of those issuances of compensation.

It stands against all common sense to suggest that Plaintiff remained at the facility, working and being paid for his work, against the Plaintiff's will. Plaintiff has suggested that, because he was expected to perform certain tasks and report to certain persons at APS that this negates his ability to be independently contracted. Again, this proposition stands against ordinary business practices. No business would continue to contract with a vendor that did not perform the tasks for which they were compensated. Likewise, few businesses would not expect a vendor to inform and advise as to the status of the tasks assigned.

Plaintiff has also suggested that his job did not change "one iota" from the time he accepted his position as a consultant until his final day of work at the facility. However, Plaintiff has made statements to the contrary, suggesting at times that he actually did nothing during his time as a consultant. Further, the second letter requested by the Plaintiff confirms that Plaintiff agreed to assist in the transition of his replacement and to assist his replacement in performing tasks.

**Proposition Three: Plaintiff employment history and subsequent claims underscore the fact that ATI, APS and CAE are separate entities**

Plaintiff has stated both that he was employed by ATI and APS since 1994. Conversely, Plaintiff has stated that he was aware that the owners of ATI purchased APS after Plaintiff had worked for ATI for some time. Plaintiff has also stated that he has never been to CAE for any business purpose.

Plaintiff filed for unemployment benefits against ATI on May 9, 2004. Plaintiff was subsequently determined eligible to receive benefits for his claim against ATI by the Oklahoma Employment Security Commission. In Plaintiff's subsequent Equal Employment Opportunity Commission complaint, signed by Plaintiff on May 20, 2004, Plaintiff then made claim against APS. Notably, Plaintiff never made an EEOC claim against CAE. At the conclusion of the EEOC charge process, when the EEOC determined that Plaintiff's claims were not Plaintiff then filed suit naming APS and CAE. Notably, ATI remained in bankruptcy throughout this time period.

As mentioned in propositions above, APS, a company purchased from another individual long after the formation of ATI, had ceased operating until it was preparing to be purchased and subsequently purchased by Ms. Brown. CAE, a company incorporated and operating in a separate state, was not formed until 2003, never employed Plaintiff and was never owned by the owners of ATI. Notably, in his EEOC complaint, the Plaintiff makes mention that he is aware of the change in ownership and that "the company" was not owned by its current owners at the time he claims to have been terminated.

These distinct corporate and employment histories and Plaintiff's conflicting statements concerning his employment at one or more of the business in search of an entity against whom he could go forward with a claim demonstrates that Plaintiff knew that these companies were separate, with distinct assets and capacities.

**Proposition Four: All produced documents identified as exhibits are admissible and should be allowed to be admitted into evidence in this case.**

The Plaintiff apparently would like the Court to disallow evidence concerning the Defendant's costs of insurance. On the other hand, Plaintiff would like to go forward with

a claim that he was regarded as disabled or otherwise discriminated against due in some part to the cost to Defendants of insuring him. Plaintiff claims hearsay and disputes the redaction of "ID numbers".

The Defendant can sponsor the exhibit, as it was a bill that she paid. The Defendants, through the owner, Ms. Brown, will certainly be able to make the statement that she paid according to this bill she received while Ms. Brown is in court. She will be making the statement "to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive". FRE 801(d)(1)(B). Redaction of company employees' ID numbers is in compliance with the rules. Since the evidence is clearly relevant and goes directly to the heart of the matter, it should be admitted.

Plaintiff would also like for this Court to disallow admission of the Plaintiff's EEOC complaint file. As stated above, however, the file contains several conflicting statements about the Plaintiff's employer and statements that are inconsistent with the Plaintiff's subsequent statements. The file also contains information relayed to the Defendants that is relevant to their Defense.

Further, the specifically numbered document, P 0152, is intended to be offered to demonstrate that it was only after the EEOC told Plaintiff that his claim was insufficient that he decided to name CAE. It is also intended, due to its date, May 20, 2004, to rebut the claim by Plaintiff that the Plaintiff's announced retirement was invented after the Plaintiff's filing of this suit. The EEOC file demonstrates that, while the named document was signed on May 20, 2004, the Charge was not officially noticed to the Defendant until July of 2004.

This objection is actually contrary to the cited Federal Rule of Evidence that the documents are more prejudicial than probative. In fact, they are submitted for the purpose of intended impeachment of the Plaintiff and to support the stated defense of the Defendants in the suit. The prejudice contained therein primarily relates to the Plaintiff's inconsistent statements and not statements by others. Further, the statements by anyone other than Plaintiff are made in the ordinary course of business in the administrative capacity of managing a claim. Therefore, the documents should be admitted.

## Conclusion

While the disputed facts of this case are familiar to any discrimination claim, the inability to agree on preliminary issues such as whether the Plaintiff was an employee ad whether there is subject matter jurisdiction to hear one or more of the claims makes the case somewhat unique. Defendants anticipate the Court and fact-finders paying particular attention to facts not generally in dispute at the trial stage.

Respectfully submitted,

_____

Anthony Allen                                OBA No. 19738
417 West Broadway
Muskogee, Oklahoma 74402
918/683-3219 *telephone*
918/683-3279 *facsimile*
***Attorney for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of August 2006, I mailed and emailed a true and correct copy of the foregoing document to:

Jim T. Priest, Esq.
Kathryn D. Terry, Esq.
P.O. Box 13880
Oklahoma City, Oklahoma 73113
jimpriest@whitten-nelson.com
kterry@whitten-nelson.com
**Attorneys for Plaintiff**

Anthony Allen